J-S34044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| C.R. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| D.H. | : | No. 258 WDA 2018 | |

Appeal from the Order January 5, 2018
in the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2017-1923-CD

BEFORE: BOWES, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED JULY 24, 2018**

C.R. (Father) appeals *pro se* from the order entered January 5, 2018, dismissing his complaint for custody of his minor daughter, C.H. (Child), after a custody conference during which he did not have the opportunity to participate. After careful review, we are constrained to vacate that order and remand for further proceedings consistent with this memorandum.

We glean the factual and procedural history of this matter from the certified record and the trial court's opinion. Child was born in January 2010 to Father and D.H. (Mother). Father and Mother were never married. In September 2013, Father was convicted of a variety of sexual offenses, including rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, indecent assault, aggravated indecent assault, and

---

* Retired Senior Judge assigned to the Superior Court.

indecent exposure. He is incarcerated at State Correctional Institution (SCI) Greene, in Greene County, Pennsylvania.

On December 13, 2017, Father *pro se* filed a complaint for custody, in which he requested partial physical custody and shared legal custody of Child. Father attached to his complaint a criminal record/abuse history verification acknowledging his convictions. The trial court scheduled a custody conference for January 4, 2018. Mother appeared at the conference. However, due to problems with the court's teleconferencing system, the court could not make contact with Father at SCI Greene. After an *ex parte* discussion with Mother, the court concluded that it would not award custody to Father. The court entered an order dismissing Father's complaint on January 5, 2018.

Father *pro se* timely filed a notice of appeal.[1] On March 20, 2018, this Court ordered Father to file a concise statement of errors complained of on

---

[1] Because the trial court entered its order on January 5, 2018, Father's notice of appeal was due by Monday, February 5, 2018. Upon review, it appears that Father's notice of appeal was timestamped February 5, 2018, but that the original timestamp was covered with correction tape and replaced with a timestamp indicating February 15, 2018. There is no explanation in the record for this alteration. Additionally, we observe that Father dated his notice of appeal January 31, 2018. Pursuant to the prisoner mailbox rule, Father's notice of appeal would be timely filed if he presented it to prison officials for mailing on or before February 5, 2018. **Thomas v. Elash**, 781 A.2d 170, 176 (Pa. Super. 2001) ("[A] legal document is deemed filed by an incarcerated litigant, proceeding *pro se,* on the date it is delivered to the proper prison authority or deposited in the prison mailbox."). Accordingly, under the circumstances presented here, we deem Father's notice of appeal to be timely filed.

appeal in accordance with Pa.R.A.P. 1925(a)(2)(i) by April 2, 2018. Father timely complied.[2]

Father now presents the following question for our review. "Did the trial court error [*sic*] when it denied [Father's] fourteenth amendment right to due process when the court denied [Father] a hearing in respect to his custody complaint for visitation and meaningful communication [with] his daughter?" Father's Brief at 6 (unnumbered).

Father's due process challenge presents a pure question of law. As such, our standard of review is *de novo* and our scope of review is plenary. ***Wirth v. Commonwealth***, 95 A.3d 822, 836 (Pa. 2014).

It is well established that parents have a fundamental liberty interest in the care, custody, and control of their children. ***Hiller v. Fausey***, 904 A.2d 875, 881 (Pa. 2006). As such, parents have a right to procedural due process in all child custody proceedings. ***Everett v. Parker***, 889 A.2d 578, 580 (Pa. Super. 2005). Procedural due process requires that parents receive formal notice and an opportunity to be heard at a meaningful time and in a meaningful manner. ***Id.***

In this case, Father contends that the trial court committed legal error when it dismissed his complaint for custody because the court failed to provide

---

[2] We have accepted Father's concise statement pursuant to ***In re K.T.E.L.***, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that the appellant's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

him with an opportunity to be heard in accordance with his due process rights.

Father's Brief at 9-12. Father maintains that the court engaged in improper

*ex parte* communications with Mother, and dismissed his custody complaint

based on those communications. **Id.** at 9, 12. Father further maintains that

the court misapplied the portion of our child custody statute dealing with

consideration of criminal convictions by assuming that his convictions

prohibited him automatically from exercising any custody of Child. **Id.** at 9,

14-17 (discussing 23 Pa.C.S. § 5329).

In its order dismissing Father's complaint, the trial court provided the

following explanation for its decision.

> Th[e trial c]ourt has been made aware that [Father] is
> serving a lengthy period of incarceration following multiple
> criminal charges, including rape involving a child, and therefore
> the custody conference will not be rescheduled. Due to the sexual
> nature of [Father's] offenses, he is to have no contact with minors,
> including his own biological children, and th[e trial c]ourt will not
> order otherwise. Thus, a custody conference is unnecessary.

Order, 1/5/2018.

The trial court further explained its decision in its opinion pursuant to

Pa.R.A.P. 1925(a)(2)(ii).

> . . . . [The trial c]ourt is of the belief that, given the circumstances
> at play, [Father] was given a sufficient opportunity to be heard
> when th[e trial c]ourt took into consideration the information
> presented in [Father's] [c]ustody [p]etition. In some instances,
> circumstances will call for a predetermination as to the
> reasonableness of the claims being made by a [p]etitioner seeking
> custody rights prior to the scheduling of an unnecessary hearing.
> The case at hand called for such a determination.

\*\*\*

It is evident that Pennsylvania legislative and decisional law aims to provide every possible means for safeguarding a child against potential harms and ensuring that the best interests of the child, based on a subjective analysis of the factors at issue, is the [c]ourt's chief concern. Thus, the facts as known to th[e trial c]ourt at the time the determination was made to dismiss [Father's] [c]omplaint clearly establish that it is not within [C]hild's best interests to continue with custody proceedings. First, every charge pled to by [Father] is listed under § 5329 and are the types of offenses that would lead any reasonable court to determine contact with [Father] poses a threat of harm to [C]hild. Second, [Father] is serving an extensive prison sentence, and he will likely be incarcerated until [C]hild [] is an adult. Therefore, all contact with [Father] would require [Mother] to travel the approximately 170 miles from Clearfield to [SCI Greene], one way, to allow [Father] to exercise his custody rights. While waiting for the custody conference to begin, [Mother] stated that [C]hild has been diagnosed on the autism spectrum and is confused as to why they were appearing at the courthouse because she does not know [Father] as her father. Additionally, [Mother] is in poor health and requires the use of a wheelchair, and she does not drive, so [C]hild would need alternative transportation to visit [Father]. Third, and most concerning to th[e trial c]ourt, is the fact that one of [Father's] victims was approximately the same age at the time of the offense as [C]hild is at this time.

Trial Court Opinion, 4/6/2018, at 3-4 (footnote omitted).

Upon review, we disagree with the trial court's analysis. As discussed above, Father has a fundamental liberty interest in the care, custody, and control of Child. *Hiller*, 904 A.2d at 881. That means that Father has a right to procedural due process in any proceeding where his custody of Child is at issue, including notice and the opportunity to be heard. *Everett*, 889 A.2d at 580. Here, the court dismissed Father's complaint without providing him any such opportunity, in violation of his due process rights.

- 5 -

We find instructive this Court's recent holding in **S.T. v. R.W.**, ___ A.3d ___, 2018 WL 3198393 (Pa. Super. filed June 29, 2018). In that case, an incarcerated mother filed a custody petition requesting telephone calls with her daughter. **Id.** at *1. The trial court conducted a hearing on the mother's petition, but only permitted her to participate by submitting a written statement. **Id.** at *3. The court then denied her request for telephone calls and awarded sole legal custody to the child's father. **Id.** at *4. On appeal, a panel of this Court concluded, among other things, that the court violated the mother's due process rights by failing to provide her with the opportunity to participate in the hearing via telephone or video conference. **Id.** at *1-2, 13-14. The Court explained as follows, in relevant part.

> In the instant matter, the trial court's procedure afforded Mother no meaningful opportunity to advocate for herself during the hearing. She could not respond, nor cross-examine Father's points. She could not call witnesses, nor introduce evidence. She could not make objections.
>
> For illustration, the trial court accepted all of Father's testimony regarding his employment experience with prisoner visitation at SCI Mahanoy – namely its unsavory characteristics and the irregularity of telephone access. Because of the court's limiting order, Mother did not have an opportunity to counter Father's assertions and describe the visitation procedures and conditions at her facility. We cannot say the defect lies with [the] trial court's scheduling order, which outlined for Mother what information she should submit to the court. Nor can we blame Mother for a written statement lacking in this detail. No matter how specific Mother made – or could have made – her pre-trial written statement, she could never fully defend her position if Father opposed it. Moreover, she could never fully advocate for her position if she could not oppose Father's. But now that an incarcerated parent has the ability to advocate in real time, at a comparatively minimal cost on the courts, we conclude that the

same is necessary to guarantee a meaningful opportunity to be heard.

***Id.*** at *14.

Moreover, we express concern that the trial court in this case based its decision in part on information it received during an *ex parte* discussion with Mother. **See** Pa.C.J.C. Rule 2.9(A) (providing, with limited exceptions, that a judge "shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter …."). The court's discussion with Mother was not transcribed, and there is no support in the record for several of its findings. Specifically, the record lacks support for the court's findings that Father's sentence prohibits him from having contact with Child, that Child suffers from autism and is confused, that Mother is in poor health and does not drive, and that one of Father's victims was approximately the same age as Child. **See Eck v. Eck**, 475 A.2d 825, 827 (Pa. Super. 1984) ("[A] trial court may not consider facts or evidence *dehors* the record in making its determination. Nor may this court uphold a trial court's order on the basis of off-the-record facts.") (citations omitted).

Finally, we agree with Father that his criminal offenses do not prohibit him automatically from exercising any form of custody of Child. It is clear that trial courts must consider the nature of an incarcerated parent's criminal conduct before making a custody award. **See D.R.C. v. J.A.Z.**, 31 A.3d 677, 687 (Pa. 2011). Specifically, subsection 5329(a) requires courts to consider criminal conduct if a parent has been convicted of certain enumerated

offenses, and to determine whether a parent poses a threat of harm to the child before awarding any form of custody. *See* 23 Pa.C.S. § 5329(a). However, a parent's criminal conduct only prohibits an award of custody under very limited circumstances, which are not relevant here. *See* 23 Pa.C.S. § 5329(b), (b.1).

We stress that our decision in this case does not mean that the trial court must award Father with some type of custody. We conclude only that the court cannot make its custody determination without first providing Father an opportunity to be heard in accordance with his procedural due process rights. Therefore, we vacate the order dismissing Father's custody complaint, and remand for the court to conduct a new custody conference, during which Father must have an opportunity to be heard. If this case advances to a hearing, Father must have an opportunity to be heard at that proceeding as well.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2018